IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CRIM. ACTION NO. 5:03CR30023 |
| v. | MEMORANDUM OPINION |
| ARMEN MIKAYELYAN, | |
| Defendant. | JUDGE JAMES H. MICHAEL, JR. |

On November 12, 2003, the defendant, Armen Mikayelyan, pled guilty to violating and conspiring to violate the Contraband Cigarette Trafficking Act, 18 U.S.C. § 2342(a). A sentencing hearing was held before this court on December 8, 2004. At that hearing, a dispute arose as to the proper calculation of the defendant's sentencing range under the federal sentencing guidelines. The range is based in large part on the amount of state excise tax evaded by the defendant, who objected to the amount of tax evaded that was used in the Presentence Investigation Report prepared by the Probation Office. This issue could not be resolved at the December 8, 2004 hearing. The court adjourned the hearing and ordered the parties to submit their proposed calculations and additional support for their positions. Both parties subsequently submitted briefs laying out their positions and the legal authorities on which they rely. In addition, the government moves the court for an order allowing it to subpoena from the defendant the documentation he is required by California to maintain in order to export cigarettes from that state.

**I. Background**

The Contraband Cigarette Trafficking Act (CCTA) makes it a crime knowingly to ship, transport, receive, possess, sell, distribute, or purchase contraband cigarettes. 18 U.S.C.

§ 2342(a). "Contraband cigarettes" means a quantity in excess of 60,000 cigarettes which do not bear any applicable tax stamp from the state in which they are found, with exceptions for certain authorized persons. *Id.* at § 2341(2). The defendant pled guilty to one count of receiving, possessing, or transporting contraband cigarettes, in violation of 18 U.S.C. § 2342(a); one count of conspiracy to ship, transport, receive, possess, sell, or distribute contraband cigarettes, in violation of 18 U.S.C. § 371; and a forfeiture count pursuant to 18 U.S.C. §§ 981(a)(1)(c) and 2461(c).

The parties agree that the defendant violated, or conspired to violate, the CCTA on three separate occasions. First, on November 7, 2002, Mikayelyan's driver picked up 7,500 packs of cigarettes from a travel plaza in Virginia and drove into West Virginia, presumably bound for California, where the defendant resides. Then, on November 22, 2002, Mikayelyan bought 12,000 packs at the Virginia travel plaza and drove into Tennessee, presumably bound for California. Finally, on January 15, 2003, Mikayelyan was arrested by undercover agents in Virginia in a "buy-bust" operation after he attempted to buy 30,000 packs from them. An employee of the travel plaza had become a confidential informant for the government and helped to arrange this final transaction.

### A. *Presentence Investigation Report*

The Presentence Investigation Report (PSR) assumes that Mikayelyan evaded California taxes on all three shipments, calculating the total loss to be $43,567.50. This amount of tax evaded results in a base offense level of 14, according to sections 2E4.1 and 2T4.1 of the United States Sentencing Commission Guidelines. This base offense level, after an adjustment for

acceptance of responsibility, and in combination with the defendant's criminal history category of I, yields a sentencing range of ten to sixteen months.

### B. Defendant's position

The defendant concedes that the first two shipments (19,500 packs total) were brought to California. He contends, however, that he did not sell the cigarettes in California, but rather shipped them from California to Armenia. In support, he submitted into evidence: (1) a letter from the Tax Board of Armenia showing that he shipped 19,200 packs of cigarettes to Armenia in December 2002; (2) a notarized English translation of that letter; (3) a notarized letter from the translator certifying the translation; and (4) a letter from the Armenian Consul in Washington, D.C. stating his conclusion that the letter from the Armenian Tax Board is authentic. Because these cigarettes were not sold in California, Mikayelyan argues that he was not required to pay any California tax on those cigarettes, and therefore no California tax was evaded with regard to those shipments.

Regarding the third incident, the defendant argues that because he was busted before he could transport or distribute the cigarettes, and because the cigarettes therefore never left Virginia, he never owed California taxes on them. Therefore, no California taxes were evaded on the third shipment. According to Mikayelyan's calculation, then, the total amount of tax evaded is zero, resulting in a base offense level of 9 and a sentencing range of zero to six months. *See* U.S. Sentencing Guidelines Manual §§ 2T4.1, 2E4.1 (2003).

### C. Government's position

The United States supports the PSR's conclusion that California taxes were evaded on

all three shipments. According to the government, the evidence shows that the first two shipments of cigarettes were in fact sold in California and not exported. As for the Armenian Tax Board letter, the government claims that it does not prove that Mikayelyan exported the specific shipments at issue here, since Mikayelyan purchased significant additional quantities of cigarettes in Virginia during the relevant time period. The government, however, has not submitted any evidence in support of this last assertion.

The government also argues that Mikayelyan evaded California taxes on the first two shipments even if he exported those cigarettes from California to Armenia. According to the government, California requires a tax on any "distributor" of more than 400 cigarettes, and Mikayelyan's transportation and possession of cigarettes in California qualified as a distribution. West's Ann. Cal. Rev. & T. Code §§ 30011, 30101, 30106 (2004). The United States concedes that the excise tax does not apply to cigarettes which are exported abroad from California, but argues that Mikayelyan is not eligible for this exemption because, if he did export the cigarettes, he has not established that he did so in the proper way. The government points out that cigarette exporters must obtain and retain copies of United States Customs shippers' export declarations or other documentary evidence of export. Cal. Code Regs. tit. 18, § 4080 (2005). The government does not believe that the purported document from the Armenian Tax Board meets this requirement. Finally, the government notes that California law establishes a presumption that all cigarettes transported to California, and no longer in the possession of the distributor, have been distributed. Cal. Rev. & T. Code § 30109. The government argues that this presumption should apply to the defendant in this case.

As for the third, would-be shipment of cigarettes, which was the subject of the government's buy-bust operation, the government argues that the amount of tax evaded should include the amount of tax the defendant would have evaded had he been successful in his attempt to transport the cigarettes to California and sell them there – the same approach used in sentencing for tax evasion and fraud cases.

### D. Government's motion for subpoena

The government moves the court to allow it to subpoena from the defendant the documents he is required to retain in order to export cigarettes from California, as well as any notice provided to the California Board of Equalization regarding any batches of 400 or more cigarettes that Mikayelyan brought into the state.

The defendant objects to the motion for a subpoena on the grounds that: (1) the motion is untimely, since the government had plenty of opportunity to request the documents before the December 8, 2004 sentencing hearing; (2) the evidence would be cumulative; (3) the evidence is available through other means, and the government has not exercised due diligence in pursuing those other means; (4) the government has not described the documents with particularity and is engaging in a fishing expedition; and (5) it would violate the defendant's Fifth Amendment privilege against self-incrimination to require him to state that he does not possess the requested records, should that be the case.

## II. Analysis

### A. Did Mikayelyan evade California taxes even if the cigarettes were shipped to Armenia?

California law imposes a total tax on cigarette "distributors" of eighty-seven cents ($0.87)

per pack. Cal. Rev. & T. Code §§ 30101, 30123, 30131.2. *See also California Ass'n of Retail Tobacconists v. California*, 135 Cal. Rptr. 2d 224, 234, 260 (Cal. Ct. App. 2003). A "distributor" is defined as one who engages in "distribution," which in turn includes: (1) the sale of untaxed cigarettes in California, or (2) the use or consumption of untaxed cigarettes in California. Cal. Rev. & Tax. Code §§ 30008, 30011. The United States contends that Mikayelyan engaged in the use or consumption of the cigarettes at issue. California defines "use or consumption" as the "exercise of any right or power over cigarettes . . . incident to the ownership thereof, other than the sale of the cigarettes . . . or the keeping or retention thereof by a licensed distributor for the purpose of sale." *Id.* at § 30009. Because it applies only to actions *other than* the sale of cigarettes, however, the "use or consumption" provision cannot apply to the defendant here, because it is undisputed that his purpose was to sell the cigarettes. This makes sense because, otherwise, the second form of distribution ("use or consumption") would substantially overlap with the first ("sale"). The way the definition of "distribution" is structured, however, indicates that those engaging in the sale of cigarettes are covered by the first definition of "distribution." And that form of distribution is limited to the "sale of untaxed cigarettes *in this state.*" *Id.* at § 30008(a) (emphasis added). Therefore, one who possesses cigarettes in California for the purpose of selling them outside the state is not subject to the California cigarette tax, contrary to the assertions of the government and its witness.

This understanding of the California statute is confirmed by California's code of regulations, which provides that the cigarette tax does not apply to the sale of cigarettes which are exported. Cal. Code Regs. tit. 18, § 4080 (2005). The regulations further provide that anyone

seeking to export cigarettes abroad from California must obtain and retain "copies of United States Customs shippers' export declarations or other documentary evidence of export . . . ." *Id.* *See also* Cal. Rev. & T. Code §§ 30431, 30432 (requiring transporters of unstamped cigarettes to obtain a permit and to carry the permit in the transporting vehicle, as well as invoices, bills of lading, or delivery tickets).

At the December 8, 2004 hearing, the government argued that Mikayelyan did not fall within any of the CCTA's exceptions that authorize certain persons to transport cigarettes that would otherwise be contraband. That argument, however, puts the cart before the horse. The threshold question is whether the cigarettes were contraband in the first place. The CCTA's definition of "contraband cigarettes" piggybacks on state law: cigarettes are contraband if they fail to bear any *applicable* tax stamp required by a state in which they are found. As discussed above, California would not require Mikayelyan to pay taxes on cigarettes he exports from California. The United States argues that California requires cigarette exporters to retain certain documents, and it seeks to subpoena the defendant to turn over any such documents in his possession. The government does not believe that the letter from the Armenian Tax Board submitted by the defendant is sufficient documentation under California law. The court finds that it need not decide this question. Even assuming that the defendant lacks the required documentation, that would not render him subject to the California cigarette tax. Whether Mikayelyan violated California laws requiring him to retain certain paperwork is a matter of state enforcement, and the court finds that it is not relevant to the federal definition of "contraband cigarettes" under the CCTA. For the purpose of calculating the amount of California tax evaded

by the defendant under the federal sentencing guidelines, it is enough that *if* the defendant exported the cigarettes abroad, such action does not amount to a distribution under California law, and California therefore does not impose a tax in such a situation. That the transport and export of the cigarettes may have been improper does not transform Mikayelyan from a non-distributor into a distributor.

The strongest support for the government's position is the Fourth Circuit's decision in *United States v. Boggs*, 775 F.2d 582 (4th Cir. 1985), although the government did not cite it at the hearing and mentions it only tangentially in its follow-up brief. In *Boggs*, the defendant bought 3,000 cartons of cigarettes in North Carolina and set out for Michigan, where he lived. He was stopped in West Virginia. Although the government stipulated that Boggs intended to sell the cigarettes in Michigan, the federal government charged him with failing to pay the West Virginia cigarette tax, in violation of the CCTA. Boggs pointed out that West Virginia law only requires a tax stamp on cigarettes for sale in West Virginia. The court found that, despite this language in the West Virginia law, West Virginia could impose a tax on Boggs' cigarettes. The court relied on two West Virginia statutory provisions: one providing that anyone possessing more than twenty packs of cigarettes without West Virginia tax stamps shall be presumed to be evading West Virginia taxes, and a second law requiring those transporting unstamped cigarettes through West Virginia to have proper paperwork to that effect (which Boggs did not have). *Id.* at 584-85 (citing W. Va. Code §§ 11-17-19(b)(6), 11-17-20).

*Boggs*, however, is inapplicable here because California's statutory scheme differs from West Virginia's. While California, like West Virginia, does require certain documentation from

cigarette transporters, it establishes a different presumption. In California, "[u]nless the contrary is established, it shall be presumed that all cigarettes . . . acquired by a distributor are untaxed cigarettes . . . , and that all cigarettes . . . manufactured in this state or transported to this state, and no longer in the possession of the distributor, have been distributed." Cal. Rev. & Tax Code § 30109. Thus, California, unlike West Virginia, does not presume that the distributor is evading taxes. Also, as explained above, if Mikayelyan exported the cigarettes, he would not meet the definition of a "distributor" in this case, so the presumption would not apply to him. Even if it did apply, Mikayelyan can overcome the presumption simply by establishing that he did not in fact distribute the cigarettes in California. The court in *Boggs* found that West Virginia could have imposed its cigarette tax on Boggs. 775 F.2d at 584. By contrast, assuming Mikayelyan exported his cigarettes, California could not have imposed its cigarette tax on him, although it could have forced him to comply with the state's documentary requirements.

### B. First two shipments: where were they sold?

The court finds that a preponderance of the evidence shows that the 19,500 packs of cigarettes involved in the first two transactions were sold in California, not exported to Armenia.

The government did not present direct evidence that Mikayelyan sold the cigarettes from the two November 2002 transactions in California. Instead, it relies on comments allegedly made by the defendant to an undercover federal agent, Kurk Broksas of the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF). Agent Broksas testified at the December 8, 2004 hearing that Mikayelyan told him in January 2003 – during the buy-bust operation – that "in the past" Mikayelyan had purchased cigarettes in Virginia, rubbed off the Virginia tax stamps, and

replaced them with California tax stamps before selling the cigarettes in California. According to Broksas, Mikayelyan stated that the cigarettes he thought he was about to purchase from Broksas would be sold in California. Mikayelyan also explained that the cash he had brought to purchase the cigarettes was earned from previous sales of Virginia-purchased cigarettes in California. The government also points to testimony by Agent Broksas that the defendant made statements indicating that he knew he was doing something illegal. There is no evidence, however, that Mikayelyan ever stated specifically that the cigarettes from the first two shipments at issue here had been sold in California.

Evidence has also been presented suggesting that the cigarettes were exported. As the government concedes, Mikayelyan had previously told the confidential informant that he was selling the cigarettes in Russia, and after his arrest, Mikayelyan told law enforcement officers that he was sending the cigarettes to Armenia, the same position he maintains now. (It is not clear whether Mikayelyan's previous statements referred to the first two shipments specifically, the third shipment, and/or his scheme generally.) Furthermore, the defendant has presented documentary evidence purporting to show that he exported 19,200 packs to Armenia, where the applicable Armenian taxes were paid on the shipment on December 27, 2002. The proximity in time and in the number of cigarettes involved suggests that the cigarettes shipped to Armenia may have been the ones purchased by Mikayelyan in Virginia in November 2002. While the government intimates that the letter from the Armenian Tax Board may not be authentic, it has not presented any evidence to that effect.

Based on the evidence presented by both parties, the court would find it probable that the

cigarettes at issue were exported to Armenia, but for one fact: the defendant pled guilty. The position the defendant now takes with regard to sentencing – that he did not owe state taxes on the first two shipments – is tantamount to a statement that he is not in fact guilty of violating the CCTA. The Act makes it a crime to possess or transport more than 60,000 cigarettes that do not bear the applicable tax stamp in the state in which they are found. 18 U.S.C. §§ 2341(2), 2342(a). If Mikayelyan did not evade state cigarette taxes because he exported the cigarettes to Armenia, as he maintains, it is hard to conceive how the cigarettes could have been found in California without an *applicable* tax stamp. At the defendant's guilty plea hearing on November 12, 2003, the court found, as it had to, that the plea was knowing and voluntary. The defendant's counsel emphasized at the sentencing hearing that Mikayelyan was not contesting his guilt. However, the court cannot credit the defendant's plea of guilty to the crime of transporting contraband cigarettes and then also credit his current contradictory assertion that, essentially, the cigarettes were not contraband because they were exported. Therefore, the court must conclude that Mikayelyan evaded California taxes on the first two shipments.[1]

---

[1] At the December 8, 2004 hearing, defense counsel suggested, as an alternative to finding that no taxes were evaded, that the court apply Tennessee's cigarette tax rate, since the defendant drove the second shipment into Tennessee. The defendant, however, has provided no basis for looking to Tennessee rather than California, other than Tennessee's lower tax. Unlike California, there is no evidence that Mikayelyan sold any cigarettes in Tennessee. There is no evidence that the first shipment went through Tennessee at all, or that the third shipment would have gone through Tennessee. Nor is there any basis in the record to conclude that the defendant could have evaded Tennessee's tax, but not California's. Therefore, the court finds that the amount of tax evaded should be based on California's cigarette tax rate.

11

*C. Third shipment*

Although the defendant pled guilty to conspiracy to violate the CCTA with regard to the third shipment, that shipment was never "found" in a state other than Virginia. The evidence suggests that Mikayelyan was intending to take the cigarettes to California and sell them there, but he was arrested before he could do so. The Sentencing Guidelines do not specify whether intended loss should be included in the amount of tax evaded for purposes of sentencing under the contraband cigarette law. However, the court agrees with the government that the amount of tax evaded for sentencing purposes should include the amount of California tax that Mikayelyan intended to evade. This is the same approach used in sentencing violators of the federal tax evasion and fraud statutes. U.S. Sentencing Guidelines Manual § 2T1.1(c)(1) (2003) ("If the offense involved tax evasion . . . the tax loss is the total amount of loss that was the object of the offense (i.e., the loss that would have resulted had the offense been successfully completed)); U.S. Sentencing Guidelines Manual § 2B1.1, Application Note (3)(A) (2003) (stating that loss is the greater of actual or intended loss, and intended loss includes that which "would have been impossible or unlikely to occur (e.g., as in a government sting operation . . . ).") Applied to the CCTA, this rule has the obvious advantage of preventing a violator from benefitting from the fact that he was arrested before he could ship the contraband. Therefore, the amount of California tax the defendant would have evaded, had he succeeded in his plan to sell the cigarettes in California, should be included in the total amount used to calculate his sentencing range.

*D. Motion for subpoena*

As explained above, it makes no difference under the CCTA whether Mikayelyan retained the proper documentation of his transportation and export of cigarettes. The government's request to subpoena these documents is also moot in light of the court's finding that Mikayelyan did not export the cigarettes. The documents requested by the government are therefore irrelevant to the defendant's sentencing, and the court will deny the government's motion for a subpoena.

### III. Conclusion

If Armen Mikayelyan had exported the first two shipments of cigarettes at issue in this case overseas, California law would not have required him to pay the state cigarette tax on them, and he therefore would not have been evading that tax (although he may have violated California's paperwork requirements for cigarette transporters and exporters). However, if those cigarettes did not require California tax stamps, the court cannot conceive how Mikayelyan could be guilty of violating the federal Contraband Cigarette Trafficking Act, which makes it illegal to possess or transport cigarettes in a state where the cigarettes lack the applicable tax stamp of that state. Because the defendant pled guilty to this crime, the court cannot find now that he evaded no taxes. The court also finds that Mikayelyan intended to evade California taxes on the third shipment. Therefore, for the purpose of calculating the defendant's sentencing range, the court finds that the defendant evaded California taxes on all the cigarettes in all three shipments involved, a total of 49,500 packs, as stated in the Presentence Investigation Report.

An appropriate order shall this day issue.

ENTERED: _____
Senior United States District Judge

5-26-2005
Date